# KREIBOHM, Appellant, v. YANCEY, et al.

### Division One, February 5, 1900.

| 154 | 67 |
| a155 | 153 |
| 154 | 67 |
| 158 | 259 |
| 158 | 260 |
| 154 | 67 |
| 166 | 526 |

1. **Appeals:** WHEN MOTIONS, INSTRUCTIONS, ETC., ARE REVIEWABLE. The motion for a new trial and instructions called for in the bill of exceptions are reviewable on appeal if contained in the printed abstract, although the clerk failed to set them out in the bill of exceptions.

2. **Replevin:** ASSIGNMENT: NEW BOND. It is a proper exercise of the court's discretion to require a substituted plaintiff, to whom the cause of action has been assigned by the original plaintiff in replevin, and who is in possession of the property claimed, to file a bond before he can proceed with the action.

3. ————: EVIDENCE: INTEREST: CROSS-EXAMINATION. It was not error to permit defendant (in an action of replevin to recover property given under chattel mortgage to secure a loan where the defense is usury) to question plaintiff on cross-examination as to the rate of interest usually charged by him for such loans, and also to show by the stenographer that on a previous trial he had testified to a different rate.

4. ————: VERDICT: ADJOURNMENT: AMENDMENT. The jury returned two verdicts in replevin, one that defendant was entitled to $250 for the mortgaged property wrongfully taken and $50 damages, and when this was received and read the court ordered adjournment, and the sheriff was crying adjournment when the foreman arose and announced that the jury had an additional verdict, which was then received and was to the effect that a certain machine was not covered by the mortgage on which plaintiff's action was based, and awarded defendant $100 therefor and $50 damages. Thereupon the court, after ascertaining that the jury meant to find defendant entitled to the possession of all the property and to award him $350 for the whole and $100 as entire damages, directed the foreman to correct the verdict accordingly, which was done, and the verdict as corrected was read, and all the jury assented thereto. *Held*, that the amendment having been made before the court did in fact adjourn, and in open court and in the presence of the jury, there was no error.

5. **Interest:** RESTRAINT OF TRADE: CONSTITUTIONAL. Laws regulating interest are not unconstitutional as being in restraint of trade. The right to contract for interest is a privilege conferred by the government, and does not exist outside of such laws.

6. **Usury**: STATUTE OF 1891. The statute of 1891 (Laws of 1891, p. 170), providing that, in suits to enforce liens given against personal property, proof that the person claiming through such a lien received or exacted usurious interest shall render such lien invalid, is in harmony both with the State and Federal Constitution, and is not invalid either as being in restraint of trade or as class legislation.

7. ———: NOTES IN EXCESS OF DEBT. Twelve notes for $21 each, or $252 in all, given for the payment, in twelve months, of a debt of $189 delivered to the maker, constitute a usurious contract; and proof that they were so given is a complete defense to a suit in replevin to recover the property covered by a mortgage given to secure the payment of nine of them. The test of usury in a contract is whether it would if performed result in securing a greater rate of profit on the subject-matter than is allowed by law.

8. **Replevin**: VALUE OF PROPERTY. The value of the property at the time it was taken, and not its value at the time of the trial, is the value to be found by the jury in replevin.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,*
Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) The court erred in refusing to substitute King as plaintiff in the case. R. S. 1889, sec. 2204; Childs v. Thompson, 81 Mo. 337. (2) It was erroneous to permit defendant King to be questioned as to the rate of interest usually charged by the National Loan Company in its business and as to his testimony on this point on the former trial. State v. Harold, 38 Mo. 496; State v. Reavis, 71 Mo. 419; State v. Myers, 82 Mo. 558; Iron Mt. Bank v. Murdock, 62 Mo. 74; Hays v. Railroad, 15 Mo. App. 584. (3) The court after having accepted from the jury a verdict as their verdict in the cause, erred in afterwards returning this to the jury and permitting them to amend their verdict, and further erred in receiving the second verdict from the jury after the court had announced the adjournment until the next day. State v. Ostrander, 30

Mo. 13; Bensley v. Haeberle, 20 Mo. App. 648; Collins v. Kamman, 55 Mo. App. 462. (4) Defendants' instruction marked (a) is erroneous. Strouds Jud. Dic., title Exaction; Websters' Dic., title, Exaction; Johnson v. Vette, 77 Mo. App. 563. Defendants' instruction marked (b) is erroneous. Defendants' instruction marked (c) is erroneous. New Hampshire Cattle Co. v. Bilby, 37 Mo. App. 43; Jones on Chat. Mtgs., sec. 64; Rubey v. Coal & Min. Co., 21 Mo. App. 159. Defendants' instruction marked (e) is erroneous. Chapman v. Kerr, 80 Mo. 158; Kirkendall v. Hartsock, 58 Mo. App. 234; Herring v. Corder, 49 Mo. App. 378. (5) Section 2 of the act relating to interest and usury, Laws of Missouri 1891, p. 170, is unconstitutional and void and plaintiff's instruction to that effect should have been given and defendants' instruction based upon the act should have been refused. It is in conflict with section 1 of the 14th Amendment to the Constitution of the United States, and of the following sections of Constitution of Missouri, viz.: sec. 4 of art. II; sec. 30 of art II; and sec. 53 of art. IV. Tiedeman on Lim. of Police Power; sec. 94; Cooley's Const. Lim., p. 704; Ranson v. Hays, 39 Mo. 445; Hill v. Taylor, 125 Mo. 331; State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 400; State v. Loomis, 115 Mo. 307; Lowry v. Rainwater, 70 Mo. 152; St. Louis v. Hill, 116 Mo. 527.

*Daniel Dillon* and *O. A. Appel* for respondent.

(1) This court can neither consider the motion for new trial, nor instructions set out in appellant's abstract, for the reason that they have not been made a part of the record of this cause. They can be made part of the record only by being inserted in the bill of exceptions, and they have never been so inserted. R. S. 1889, sec. 2304; Jefferson City v. Opel, 67 Mo. 394; State v. Griffin, 98 Mo. 672; Arnold v. Boyer, 108 Mo. 310; State v. Gordon, 117 Mo. 387; State v.

Wray, 124 Mo. 543; Lloyd v. Thurman, 69 Mo. App. 145; Harper v. Oil Co., 74 Mo. App. 644; Sugar Refining Co. v. Massey, 75 Mo. App. 466. (2) There was no error in refusing to substitute King as plaintiff in this action. Clearly plaintiff should not be allowed to escape a judgment by having another man substituted in his place. Sec. 2204, R. S. 1889, has no application to cases of replevin where the plaintiff has given bond and taken the property. In such cases the plaintiff can not escape the judgment against him by transferring, or attempting to transfer, his interest in the property taken, and having another person substituted in his stead as plaintiff. Collins v. Hough, 26 Mo. 149; Berghoff v. Heckwolf, 26 Mo. 511; Ramey Ad. v. Thomas, 45 Mo. 111. (3) For the purpose of impeaching the witness, it was clearly competent to ask him if he was not engaged in the running of a business in which usurious interests was exacted and received, just as it would have been competent to ask him if he was engaged in any other illegal or disreputable business. Muller v. Hesp. Ass'n, 5 Mo. App. 390; s. c., 73 Mo. 244. (4) No error was committed by the court in directing the jury as to the form of their verdict, so as to include in one paper, or verdict, all their findings. It was the duty of the trial court to see that the verdict was in proper form. Henley v. Arbuckle, 13 Mo. 209; State ex rel. v. Rombauer, 44 Mo. 592; State v. Chumley, 67 Mo. 41; Cattell v. The Dispatch Publishing Co., 88 Mo. 356. (5) Statutes prohibiting usurious rates of interest have been in force in Missouri for very many years, if not from the first organization of the State Government, and they have always been upheld by the courts. Weimer v. Shelton, 7 Mo. 237; Marks v. Bank, 8 Mo. 316; Wiley v. Hight, 39 Mo. 130; Hemery v. Marksberry, 57 Mo. 399. And the validity of this very statute has been recognized in many cases. Drennon v. Dallincourt, 56 Mo. App. 132; Johnson v. Vette, 77 Mo. App. 563.

BRACE, P. J.—This is an action in replevin begun before a justice of the peace in the city of St. Louis. The statement, affidavit and bond are in statutory form, and the property under the order of the justice was taken by the constable from the possession of the defendants, and delivered to the plaintiff.

The property was claimed by the plaintiff under a chattel mortgage, as follows:

"Know all men by these presents that Glenwood E. Yancey of the city of St. Louis and State of Missouri, in consideration of the debt herein mentioned and created, and the sum of one dollar to me paid, by H. H. Hill of the same place, the receipt of which is hereby acknowledged, do sell and convey to H. H. Hill the goods and chattels now in the house 2335 Franklin avenue known as (Acme Laundry) in the city of St. Louis, State of Missouri, to wit: One Kreibel upright engine, No. 805, manufactured by Rice and Whitacie Mfg. Co., Chicago, Ills.; one upright boiler, manufactured by same company as engine; 2 settling tubs, 1 steam washer, 1 steam wringer, 1 soap tank, 6 pulleys, 3 pieces shafting,1 counter shaft and blower, 1 combination shirt and collar and cuff ironer, 1 collar and cuff shaper, 1 collar and cuff starcher, 5 tubs, 3 ironing boards, 1 three-spring top wagon; bay horse, 8 years old, 14 1-2 hands high; 8 flat irons, 1 Howe sewing machine, 5 tables, 2 stoves, pipe, etc., 3 chairs, counter and shelving, 1 dry house, 1 set single harness, and all other articles connected with the Acme Laundry, 2335 Franklin Ave. Upon condition that if I pay said H. H. Hill or his assigns my 9 promissory notes of this date for the sum of twenty-one dollars each, due and payable in 1, 2, 3, 4, 5, 6, 7, 8 and 9 months after date then this conveyance shall be void; otherwise it shall remain in full force and effect. Said property may remain in my possession, but in case I fail to pay said notes as they become due respectively or in case said mortgagee or assigns should at any time deem himself insecure

said mortgagee or assigns may take possession of said property and sell the same at public or private sale and out of the proceeds pay said debt and all costs and expenses, and to me the balance. At said sale, said mortgagee or assigns may purchase said property. Witness my hand and seal this 26th day of April, 1895."

The plaintiff obtained judgment for the property in the justice court and the defendant appealed therefrom to the circuit court, city of St. Louis, where upon a trial *de novo* the judgment was for the defendants, and the plaintiff appeals to this court.

On March 17, 1897, after the case had reached the circuit court the plaintiff filed therein an assignment of his cause of action to John A. King, and his petition asking that said King be substituted for him as plaintiff therein. Thereupon the court made the following order:

"Comes now the plaintiff by attorney and presents to the court his petition this day filed, praying for an order substituting the name of John A. King as plaintiff in this cause in the place and stead of Albert O. Kreibohm, and presents also to the court his assignment of the cause of action herein to said John A. King and said King's written request to be so substituted, and the court having heard and duly considered the same doth order that said petition will be sustained if a new replevin bond conditioned according to law with sureties to be approved by the court is filed in this cause on or before March 20, 1897, otherwise said motion will be overruled."

And afterwards on the 23d of March, 1897, the court made the following order:

"It appearing to the court that no new replevin bond has been filed herein as required by the order entered in this cause March 17, 1897, within the time required in said order, on motion of defendants by attorney it is ordered by the court that the motion heretofore filed and submitted herein for an order substituting the name of John A. King as plaintiff in

this cause in the place and stead of Albert O. Kreibohm be and the same is hereby overruled."

To these orders plaintiff excepted, and now assigns them as error.

The defense set up to plaintiff's action in the circuit court was that the mortgage was made and executed by the said Yancey to secure an indebtedness for which "usurious interest was taken and exacted." That the words "and all other articles connected with the Acme Laundry 2335 Franklin Avenue" were not in said mortgage when it was executed by Yancey, but were inserted afterwards without his knowledge or consent, and that a certain Columbia collar and cuff machine, taken under the writ, was not included in the mortgage.

The main features of the case are disclosed by the following evidence:

"John A. King, witness for the plaintiff, testified that he was assistant manager of the National Loan Company; that H. H. Hill was the owner and manager of that company, same being merely the name under which Hill did business; that witness closed the transaction of this loan and that there were nine notes executed, of which the notes due in 1 and 2 months after date have been paid; that the property described in the mortgage was worth about $190; that the notes were indorsed by Mr. Hill, the payee, as his name appears in the back thereof; that plaintiff was an employee of the National Loan Company at the time this mortgage was executed and a part of this mortgage was in the handwriting of plaintiff, but that the latter part of the mortgage including the words "and all other articles connected with the Acme Laundry 2335 Franklin Ave." was in the handwriting of witness; that at the time the mortgage was signed by Mr. Yancey, he also signed and delivered to witness nine notes, and only nine, each being for the sum of $21 and due in 1, 2, 3, 4, 5, 6, 7, 8 and 9 months after date being the date of the mortgage; that in considera-

tion of the execution of the notes and mortgage and at Mr. Yancey's direction and in his presence witness paid out $180 cash. This covered three prior mortgages on this property which witness paid at Mr. Yancey's request, and the difference between the amount of these and said $180 witness handed to Mr. Yancey in person; that it was agreed between witness and Mr. Yancey that the balance of $9 should cover the interest, cost of releasing the three prior mortgages, cost of acknowledging and recording this mortgage and all other expenses, including cost of writing papers if any, connected with the loan; that the cost of releasing the chattel mortgages was 35 cents apiece and the cost of recording the mortgage in question was 75 cents and the acknowledgment 50 cents, making a total of $2.30 for recording, releasing and acknowledging; that the balance was for interest and any expense there might be and for writing up the papers and so on; that up to the time of trial witness had not yet had the prior mortgages released as they had not yet tried to sell the property."

The court permitted the respondents to ask this witness on cross-examination what were the usual rates charged by the National Loan Company on loans and as to whether or not he did not testify on a former trial of the case that they charged all the way from five per cent a year to three and one-half per cent a month.

Albert S. W. Knapper, witness for defendant, testified that he attended to the matter of this loan for Mr. Yancey and that when Yancey signed the mortgage the words "and all other articles connected with the Acme Laundry 2335 Franklin Ave." were not written in the mortgage. Mr. Yancey signed twelve notes running from one to twelve months after date, for $21 each, amounting to $252; that witness heard John A. King say the property in the laundry outfit was worth $700 or $800; that witness was present when Mr. King paid out the money, and he paid $50 to a lawyer representing the Mississippi Valley Trust Company, and $50 to a man named

Trimble, and $55 to Mr. Ellison; that these parties all held prior mortgages on this property; and that then King gave to Yancey four $5 bills making a total of $175; that in the laundry was a machine called a Columbia collar and cuff ironer which had not yet been fully paid for; it was put in and set up at the time the property was taken by the plaintiff. This machine was in good condition and doing good work; that the laundry was shut down August 3, 1895, because they did not have the money to run it.

Richard T. Bradley testified for defendant that he was formerly the official stenographer in court room No. 4; that Mr. King stated on the former trial of the case that the National Loan Company charged all the way from six per cent a year to three and one-third per cent a month for money loaned by them.

Glenwood E. Yancey, defendant, testified that he made this loan from the National Loan Company and that Mr. Knapper went down to see them in regard to it; that when Mr. King came up to the laundry to appraise the property, witness pointed out to King a certain collar and cuff ironer and told King that that machine did not belong to witness, who was the owner of the laundry, at that time, inasmuch as he had it on trial and it was not yet paid for; that it was not to be included in the mortgage;......that he borrowed from the National Loan Company $175; that he signed twelve notes and that there was paid out at his request $155 in discharge of prior mortgages on the property and to the witness four $5 bills making a total of $175; that he did not agree to pay for the acknowledgment of the mortgage and was told there was no charge therefor; that the words "and all other property connected with the Acme Laundry, 2335 Franklin avenue" was not in the mortgage when he signed it; that the collar and cuff machine was in the laundry at the time plaintiff took the property under writ of replevin.

The case was submitted to the jury on instructions. Of

those given for the defendant the following are complained of as erroneous:

(a). The court instructs the jury that if you find, from the evidence, that on April 26, 1895, G. E. Yancey executed twelve notes in the sum of twenty-one dollars each, payable in one, two, three, four, five, six, seven, eight, nine, ten, eleven and twelve months respectively from date, to the order of H. H. Hill in consideration for money borrowed by Yancey at that time, and that nine of said notes were secured by and described in the mortgage in evidence, and that said Yancey delivered said twelve notes to John A. King, on said day, then such transaction was usurious, and the mortgage in evidence is void, and in that case, plaintiff can not recover, and your verdict must be for defendants.

(b) The court instructs the jury, that if you find from the evidence, that nine of the notes described in the mortgage put in evidence by the plaintiff, dated April 26th, 1895, and payable in one, two, three, four, five, six, seven, eight and nine months, respectively from date, to the order of H. H. Hill, were the only notes executed by Yancey in consideration for money borrowed at the time, and that the sum total of such notes, to wit, one hundred and eighty-nine dollars ($189) is greater than the sum actually received by Yancey, and such sums, if any, as shown by the evidence, were paid out or agreed to be paid by King at Yancey's direction or request, or with his assent, together with interest at eight per cent per annum on the actual amount so received and paid or agreed to be paid for five months, that being the average time of payments for the nine monthly payments, into which said amount was divided, then and in that case such transaction was usurious and the mortgage in question is void, and plaintiff can not recover, and your verdict must be for the defendants.

(c) If the jury believe from the evidence that at the time the chattel mortgage read in evidence, was given, the Columbia collar and cuff machine mentioned in evidence had

not been bought by Mr. Yancey the grantor in said mortgage and was simply in the premises on trial and that Mr. Yancey or his agent, acting for him in the matter, made these facts known to the person for whose security said mortgage was given or his agent acting for him therein, and said to him that the Columbia collar and cuff machine mentioned in the evidence, would not be included and was not to be included in said mortgage, and that said person or his said agent assented to this and knew it was not the intention of said grantor to include said machine in said mortgage, then the jury will find that said machine was not included in or covered by said mortgage. And if the jury further find from the evidence that the constable did take said collar and cuff machine under the writ of replevin issued in said cause, then the jury will find in favor of defendants as to said collar and cuff machine.

(e)   If, under the evidence and the other instructions of the court, the jury find for defendants as to any of the property in controversy in this action they will assess the present value of such property as to which they so find as shown by the evidence, and they will, under the evidence, assess the damages of the defendants for the taking and detention of such property in a sum equal, first, to the value of the use of such property since the taking of same less what it would have cost to keep said property in repair, if in use during that time, and less any depreciation in value which such property would have undergone by reason of being used, if it had been in use, as shown by the evidence. Second, any depreciation in the value of said property if any such is shown by the evidence by reason of any breakage or other injury caused to such property in the taking of the same under the writ of replevin in this cause, and any depreciation in value of said property caused subsequent to its taking by improper handling or treatment or want of proper care if any improper handling, treatment or want of care is shown by the evidence. And in estimating the value of such property the jury will value it

under the evidence, at its reasonable market value as set up and in position as it was at the time it was taken, as shown by the evidence."

Complaint is also made of the refusal of the court to give the following instructions for the plaintiff:

"(3)   The court instructs the jury that the defendants in this cause contend that at the time the mortgage read in evidence by the plaintiff was executed; a usurious rate of interest was exacted for the loan of the money which said mortgage was given to secure and that therefore said mortgage is invalid and illegal as being contrary to the provisions of an act of the General Assembly of the State of Missouri, approved April 21, 1891, but the court instructs the jury that said act is null and void, as being in contravention of and contrary to the Constitution of the State of Missouri and of the Fourteenth Amendment to the Constitution of the United States; and the court further instructs the jury that as it is admitted by the defendants that the amount of money borrowed at the time the mortgage in evidence was executed, and which said mortgage was given to secure, has not been repaid, the verdict of the jury in this case must be in favor of the plaintiff.

"(4) The court instructs the jury that under the law and the evidence in this case their verdict must be in favor of the plaintiff.

"(5)   The court instructs the jury that in arriving at a verdict in this case they will disregard all testimony to the effect that as consideration for the loan represented for the mortgage read in evidence by the plaintiff there were executed twelve notes instead of nine as recited in the mortgage and the jury must take as true the statement in the mortgage that the loan in question was represented by nine notes, provided the jury believe the defendant Yancey executed or agreed to execute the mortgage in the condition in which same now appears."

With the instructions there were also given to the jury

three forms for their verdict, one if they found for the plaintiff, and two if for the defendants. Upon the return of the jury into court the foreman of the jury handed the instructions and forms of verdict to the clerk of the court and the clerk read the verdict of the jury as follows:

"We, the jury, in the above entitled cause do find the issues therein joined in favor of the defendant and we further find that the defendants were at the commencement of this action entitled to the possession of the personal property in controversy. And we assess the value of said property at the sum of two hundred and fifty dollars. And we assess the defendant's damages for the taking and withholding of said property at the sum of fifty dollars."

This verdict having been read the clerk asked the jurors whether this was their verdict and they answered in the affirmative. The judge then directed the sheriff to adjourn the court to the following day. The sheriff in obedience to this order then began the customary announcement of, "Oh yez, oh yez, the Honorable Circuit Court is now adjourned," but as he was still in the act of making such announcement and just before it was completed, the foreman of the jury arose and spoke to the court, whereupon the court signaled the sheriff, and the sheriff stopped his announcement, and the jury being still in their seats, the court inquired of the foreman what he desired to say. The foreman then said that there was another verdict also returned by the jury and the court directed the clerk to hand the other verdict to the court. The other verdict was as follows:

"We, the jury, in the above entitled cause do find the issues therein joined as to one Columbia collar and cuff ironing machine in favor of the defendants: And we further find that the defendants were at the commencement of this action entitled to the possession of said Columbia collar and cuff ironing machine; and we assess the value of said machine at the sum of one hundred dollars. And we assess the defendants'

damages for the taking and detention of said machine at the sum of fifty dollars. And as to all the other personal property sued for, we find in favor of the plaintiff, and we assess the plaintiff's damages for the wrongful detention of said property at the sum of one cent."

The judge then inquired of the jurors whether the finding of the jury was in favor of the defendants as to all the property in controversy. The foreman replied that it was. The court then informed the jury that it was necessary that their finding should all be included in one verdict, and thereupon the court inquired whether they found in favor of the defendants also as to the Columbia collar and cuff machine. The foreman of the jury replied in the affirmative. The court then asked whether the jury found the value of said machine to be one hundred dollars in addition to two hundred and fifty dollars they had found to be the value of the other property, and whether they found the damages for the withholding of said machine to be fifty dollars in addition to the damages found for the withholding of said other property. The foreman replied to each of these questions in the affirmative. Thereupon the court directed the foreman to correct the verdict first received so as to make it include the entire finding of the jury and this was done by the foreman in the court room and in the presence of the jury. The verdict as so corrected was read by the clerk and he inquired of the jury whether this was their verdict and the jurors responded that it was. Whereupon the court directed the clerk to enter the said verdict again and directed the sheriff to adjourn court to the next day, which was accordingly done. Thereupon the clerk entered the said verdict and the defandants had judgment thereon.

A. The case is brought here on a certified copy of the record entry of the judgment appealed from, and of the order granting the appeal. In due time the appellant filed a printed abstract of the record, and thereafter in due time respondent filed an additional abstract showing that the instructions and

motion for a new trial set out in the appellant's abstract, although called for in the bill of exceptions, were not set out therein, and it is now contended by counsel for respondent that this court can not consider the motion for new trial or the instructions by reason of that fact. To this we can not agree. By section 2304, R. S. 1889, it is expressly provided that "It shall not be necessary, for the review of the action of any lower court on appeal or writ of error that the motion for new trial, in arrest of judgment, or instructions filed in the lower court, shall be copied or set forth in the bill of exceptions filed in the lower court: Provided, the bill of exceptions so filed contains a direction to the clerk to copy the same, and the same are so copied into the record sent up to the appellate court." Under section 2253, R. S. 1889, the record sent up to the appellate court may be either "a perfect transcript of the record and proceedings in the case, or in lieu of such transcript, a certified copy of the record entry of the judgment," etc. "together with the order granting the appeal" . . . . . . . and "a printed abstract of the entire record of said cause." In the bill of exceptions in this case, the directions to the clerk are specific enough, in substantial compliance with the requirements of the statute; and sufficient to have authorized the clerk to copy the instruction and the motion for a new trial into the perfect transcript to be sent up to this court as the record of the case, if that mode had been adopted, and we see no good reason why the same directions are not sufficient to authorize their being copied into the printed abstract, which is to be taken in lieu of a complete transcript, when this mode is adopted, as in this case. Hence we conclude they are here for review and we will proceed to the consideration of the errors assigned on the record in the order presented in the brief of counsel for appellant.

(1). It is first contended that the court erred in requiring a new bond to be given as a condition of the substitution of

VOL. 154 mo—6

King as plaintiff, and in overruling the motion for substitution upon his failure to give such bond, and in support of this contention section 2204, R. S. 1889, and Childs v. Thompson, 81 Mo. 337, are cited. By that section of the Code of Civil Procedure, provision is made for the substitution, in a proper case, of the assignee of a cause of action, after suit brought, as plaintiff; and in that case, which was ejectment, no reason for the refusal to make the substitution appearing on the record and there being nothing in the nature of the action itself to warrant it, the refusal seemed to be arbitrary, and it was held to be reversible error. But the plaintiff in an action of replevin such as this, in which he has obtained the possession of the property claimed, can not retreat at his pleasure, and the court exercised a wise discretion in not permitting him to do so, except upon the condition required. The nature of the case itself is a sufficient reason for such action. [Collins v. Hough, 26 Mo. 149; Berghoff v. Heckwolf, 26 Mo. 511; Ranney, Admr. v. Thomas, 45 Mo. 111.]

(2). It is next contended that the court committed error in permitting King to be questioned as to the rate of interest usually charged by his concern in its business, and as to his testimony on this point on a former trial. King in his evidence in chief had testified that he had not charged over eight per cent on the loan in question. He was the real plaintiff in the case, Kreibohm was a mere figurehead, and these questions were asked on cross-examination. We think they were within the scope of legitimate cross-examination and his equivocal answers to them warranted the introduction of the impeaching evidence of the stenographer.

(3). It sufficiently appears on the face of the proceedings in court upon the return of the jury with their verdicts herein fully set out, that their return was such as ought to have been amended, that it was in fact properly amended, and that the amendment was made in open court in the presence and with the assent of the jury before entry, and

before the court did in fact adjourn, and we find no error in this proceeding for which the judgment should be reversed. [Long v. Talley, 91 Mo. 310; Cattel v. Dispatch Pub. Co., 88 Mo. 356; State v. Chumley, 67 Mo. 41; State ex rel. v. Rombauer, 44 Mo. 590; Henley v. Arbuckle, 13 Mo. 209.]

(4). By section 2 of Act of the General Assembly approved April 21, 1891, R. S. 1899, sec. 3710, in force at the time the chattel mortgage in question was executed, it was provided that:

"In actions for the enforcement of liens upon personal property pledged or mortgaged to secure indebtedness, or to maintain or secure possession of property so pledged or mortgaged, or in any other case when the validity of such lien is drawn in question, proof upon the trial that the party holding or claiming to hold any such lien has received. or exacted usurious interest for such indebtedness shall render any mortgage or pledge of personal property, or any lien whatsoever thereon given to secure such indebtedness, invalid and illegal." Sess. Acts 1891, p. 171.

It is contended by counsel for appellant that this law is in conflict with section 1 of the 14th Amendment of the Constitution of the United States and with sections 4 and 30 of article II, and section 33 of article IV of the Constitution of Missouri.   The main argument in support of this contention impugns the constitutionality of usury laws generally, on the ground that such laws are in restraint of the right of contract. and are not a legitimate exercise of police power.   It would serve no good purpose to review this argument at length. The power to regulate the rate of interest has been exercised by very civilized nation, ancient or modern, whose laws survive in history (Dunham v. Gould, 16 Johnson, 367).   In Anglo-Saxon civilizations, laws against usury have always been in force.   By the Canon law interest and usury were synonymous terms, and it was unlawful to take any money for the use of money, and this law was rigidly enforced by the temporal

authorities of England until the reign of Henry VIII, when the legal right to take interest was first created by Act of Parliament ( 37 Henry VIII, cap. 9), and ever since in England and in this country, this right has existed in legal contemplation as the creature of statutory enactment. As was said by Mr. Justice FIELD in Munn v. Illinois, 94 U. S. loc. cit. 153, "The practice of regulating by legislation the interest receivable for the use of money, when considered with reference to its origin, is only the assertion of right of the government to control the extent to which a privilege granted by it may be exercised and enjoyed." It was in this light that the right was regarded in the Colonies, when the Federal government was organized and the Constitution adopted. And ever since the right has been so recognized and exercised by the States severally, in all of which with perhaps one or two exceptions, statutes have been enacted and are in force regulating the rate of interest (27 Am. and Eng. Ency. of Law 929, note 2; Tyler on Usury, chapter 3). And however much these laws may have been criticised and inveighed against by some publicists and text-writers, they have been so uniformly sustained by the courts, that now, it is conceded by some of the latest of these writers that their enactment has so long been recognized as a constitutional exercise of legislative authority as to render it very unlikely that the courts will pronounce them unconstitutional (Tiedeman's Lim. of Police Power, sec. 94). Another, Judge COOLEY, says, "That the usury laws are difficult to defend on principle; but the power to regulate the rate of interest has been employed from the earliest days, and has been too long acquiesced in to be questioned now." (Cooley's Prin. Const. Law, p. 235.) That power has been exercised by the legislature of this State since 1825, and in the many cases which have reached this court the constitutionality of its exercise has never before been questioned, and it is too late to question it in this case. The argument should be addressed to the legislature.

(5)   It is contended, however, that this particular statute is obnoxious to the provision of the State constitution inhibiting class legislation.   There is nothing in this contention.   The law applies to all persons in the same situation, and under like circumstances.   The right or privilege to take interest beyond the lawful rate is granted to no person in this State, and this law simply invalidates a security given for the performance of an unlawful contract.   It follows from what has been said that the court committed no error in refusing plaintiff's instructions numbered 3 and 4, and that the general objections urged against the instructions given for the defendant predicated upon the alleged unconstitutionality of the statute, are untenable, and this brings us to the specific objections urged against those instructions.

(6 )   The objection urged to instruction (a) given for the defendant is that it authorizes a finding for the defendant upon the theory that usurious interest may be "received or exacted" by taking therefor three promissory notes not included in the mortgage.   "The test of usury in a contract is whether it would, if performed, result in securing a greater rate of profit on the subject-matter than is allowed by law." (Webb on Usury, sec. 29.)   "The form of the agreement is immaterial since any shift or device by which illegal interest is arranged to be received or paid is usurious."   (Ib. sec. 28). "The true construction of statutes regulating interest upon the loan or forbearance of money, goods, or things in action, is that no greater rate of compensation than that prescribed shall be taken upon a loan or forbearance of money, directly or indirectly, by way of loan of property or in any other manner, no matter how disguised."   (27 Am. and Eng. Ency. of Law, p. 935).   As was well said by TREAT, J., in Ferguson v. Sutphen, 8 Ill. loc. cit. 566 and 567:   "The law against usury is founded in principles of public policy, principles that have been for ages recognized, and almost universally adopted. Without inquiring into the policy or justice of the statutes for

the prevention of usury, it is the imperative duty of the judicial tribunals faithfully to execute them. If there is any injustice or impolicy in these enactments, the fault rests with the Legislature, and it must provide the proper corrective, and not the courts. Whenever the injured party invokes the aid of the courts, and presents a case clearly within the statute, there should not be the least hesitation in applying the appropriate remedy. The only effectual mode of discouraging and preventing the practice of usury, is by a rigid enforcement of the provisions of the statute. If a case comes within the mischief of the statute, it should be held to be within the remedy. And this seems to be the principle on which these statutes have everywhere been construed and administered. The real inquiry in every case is, whether there has been a borrowing and lending at a greater rate of interest than the law allows; and this becomes purely a question of fact, to be determined from all the circumstances of the particular case. The law looks at the nature and substance of the transaction, and not to the color or form which the parties in their ingenuity have given it. No imaginable act or contrivance to cover up and conceal the usury, will avail the parties. They will not be permitted successfully to evade the provisions of the statute by any conceivable scheme or expedient. The courts will follow them through all their shifts and devices, and ascertain the true character and design of the transaction. And if upon such investigation, it appears that there was in substance a loan at an illegal rate of interest, no matter what form or shape the contract has been made to assume, it will be declared to be usurious, and the proper remedy applied."

Applying these well settled principles to the case in hand, no error will be found in the instructions in question or in the refusal of the court to give plaintiff's instruction numbered 5.

(7)   The only criticism upon the instruction (b) given for the defendant is that under the general directions therein

contained the jury might have left out of the calculation an item of sixty-three cents, which amount might have been charged under the evidence for writing up the papers. It is not at all probable that this possible item was left out, or that the contract would have been found to be usurious on that account, or that the verdict turned at all upon this instruction. At all events the plaintiff might have had it made more definite and certain, by a proper counter instruction, if he had asked it, and the judgment should not be reversed on this account.

(8) The criticism upon instruction (c) and upon the admission of the evidence upon which it was predicated, need not be answered, as the jury found for the defendant as to all the property levied upon, and could have so found only on the ground that the contract was usurious. Their finding upon that issue included the collar and cuff machine with all the other property levied upon and whatever the finding may have been upon the facts predicated in this instruction it could have done the plaintiff's case no harm even if erroneous.

(9) Counsel for plaintiff contend that, in replevin, where the jury find for the defendant, the value of the property at the time of the trial, is the value to be found by the jury (Chapman v. Kerr, 80 Mo. 158; Kirkendall, Jones & Co. v. Hartsock, 58 Mo. App. 234); and that instruction (e) given for the defendant, violates this rule. We do not think so. By a careful reading of the instruction it will be seen that the jury is simply told to assess the present value of the property, in position, as it was at the time it was taken.

Finding no error for which the judgment of the circuit court should be reversed, the same is affirmed.

All concur.