R. C. BLACKMAN, Plaintiff-Respondent,

v.

Ernest BOTSCH, Defendant-Appellant.

No. 7355.

Springfield Court of Appeals.

Missouri.

July 28, 1955.

Henson & Henson, Poplar Bluff, for defendant-appellant.

Charles T. Bloodworth, Jr., Poplar Bluff, and Briney & Welborn, Bloomfield, for plaintiff-respondent.

RUARK, Judge.

Plaintiff-respondent sued defendant-appellant for personal injuries resulting from a collision which allegedly occurred when and because defendant suddenly and without warning turned his truck to the left and directly across the road in front of plaintiff's automobile. By defendant's pleading entitled "first amended answer and counterclaim" he in the first paragraph admitted that plaintiff was driving a Mercury sedan on a farm-to-market road about one mile east of Bernie, Missouri, shortly before the collision. In paragraph 2 he denied all other allegations of plaintiff's petition and prayed to go hence with his costs. Under the separate title "counterclaim" the defendant, by paragraphs 1 to 4 inclusive, asserted primary negligence on the part of plaintiff and concluded with prayer for damages on account of property loss and personal injuries sustained. The collision occurred on a gravel road which ran straight and level in an east-west direction, and at or near the entrance to a private driveway which led into defendant's property on the south side of such road. No intersection is involved. Immediately prior to the collision both defendant's truck, which was a long bed ¾-ton Dodge, and plaintiff's car were headed west.

Appellant's first assignment is that the court erred in overruling his motion for directed verdict, on the ground that plaintiff did not make a submissible case. Taking the evidence most favorable to the plaintiff, as we must do on such assignment, we find it to be that plaintiff pulled into the roadway some quarter-mile or more east of the collision scene. At that time his car was about two city blocks to the rear of defendant. Defendant was driving fifteen to twenty miles per hour. Plaintiff was going from thirty to forty miles per hour. When plaintiff had approached within thirty to forty to fifty feet of defendant's truck he decided to pass, pulled his car to the left side of the road and "kind of hit my horn a couple of short toots." As he got the front of his car even with or past the rear fender of defendant's truck it suddenly turned across to the left (toward the private driveway entrance) in front of the plaintiff, without signal or warning of any kind. The plaintiff "hit" his brakes and tried to cut to the left but was unable to avoid the collision, and the right front of his car struck the truck at about the left rear wheel. After the air cleared, defendant's truck was standing with its front two or three feet north of the approximate center of the driveway entrance and plaintiff's car was headed at an angle to the north. Damage to plaintiff's car was to the right front corner. Damages to defendant's truck concerned the left rear wheel, fender and spring. There was evidence indicating that the force of the impact came from the

left at the left rear corner and side of the truck. Both plaintiff's right front headlight and defendant's left rear tail-light were broken. Glass was found on the south side of the road. The defendant said that as he approached the vicinity of the driveway entrance he first slowed the speed of his truck and finally brought it to almost but not quite a dead stop; that the screws had come out of his rear view mirror and it had dropped down so that he could not use it; that he started to look to the rear to see if the road was clear before commencing his turn; that he was "thinking" of putting out his hand to signal a left turn but had not yet completed his look to the rear or made his intended signal when the impact occurred. Neither he nor his wife, who accompanied him, saw plaintiff's car approaching from the rear prior to the collision. Defendant contended that he had not turned across to the left and that the collision occurred on the north side of the road. We think the recounting of the above facts sufficiently answers defendant's assignment and we hold that plaintiff made a submissible case.

The second assignment is directed at the refusal of the court to give instruction 1–D as requested by the defendant. This instruction submitted contributory negligence and the wording of it is almost identical to that of instructions which were approved in Christman v. Reichholdt, Mo. App., 150 S.W.2d 527, and Terrell v. McKnight, 360 Mo. 19, 226 S.W.2d 714, both of which were sudden stop cases. Without undertaking to discuss the propriety of such instruction under the evidence in this case, we must hold against appellant on his contention because the affirmative defense of contributory negligence was not pleaded and therefore, unless plaintiff's own evidence brought his contributory negligence into the case, it could not be submitted. Schlue v. Missouri Pacific Transportation Co., Mo. App., 62 S.W.2d 934; McNairy v. Pulitzer Pub. Co., Mo.App., 274 S.W. 849, 852; Capps v. Beene, Mo.App., 162 S.W.2d 80; Lumb v. Forney, Mo.App., 190 S.W. 988; see cases listed in Missouri Digest, Negligence, It will be noted that in the two cases last above cited counterclaims had been filed. The language of this court in Capps v. Beene, supra, 162 S.W.2d loc. cit. 82, is as follows:

"In his trial petition plaintiff alleged due care on his part and defendant coupled his counterclaim with a general denial, but defendant nowhere specifically pleaded the contributory negligence of the plaintiff. Contributory negligence must be explicitly and specifically pleaded as an affirmative defense. But defendant was entitled to no instruction on the subject. Unless plaintiff's own evidence shows him guilty of contributory negligence, as a matter of law, the defendant cannot complain. A general denial is not sufficient to raise the issue of plaintiff's contributory negligence, and defendant is not entitled to an instruction thereon unless he pleads affirmatively the contributory negligence of the plaintiff."

We find nothing in plaintiff's evidence which damns him with contributory negligence, and since the plaintiff did not show it, and defendant did not plead it, that issue could not be submitted.

The third and fourth assignments assert error in the giving of plaintiff's instruction number 1, which was his main instruction, and in the giving of instruction number 2, which was in respect to measure of damages. The only complaint is that the evidence did not justify the giving of such instructions. We have hereinabove set forth a portion of the evidence. In addition thereto plaintiff and his physician testified as to the nature and extent of plaintiff's injuries. Since appellant does not point out wherein the evidence was insufficient to justify such instructions, and since we are unable to see any deficiency in that respect, we deem it unnecessary to discuss these assignments further.

Appellant's fifth and final assignment deals with the verdicts and the conclusions to be drawn therefrom.

When the case was submitted the jury were given appropriate forms of verdict.

They first brought in a nine-man verdict for plaintiff on plaintiff's petition and assessed his damages at $5,000. No verdict was returned upon the counterclaim. The court called the attention of the jury to the forms of verdict in respect to the counterclaim and instructed them it was their duty to return a verdict on such counterclaim. The jury again retired and brought in a twelve-man verdict on the counterclaim in favor of the defendant and assessed his damages at $500. The court then informed the jury that he was unable to accept the *two verdicts* because they were inconsistent. He called counsel to the bench and asked them if they had any further suggestion in regard to informing the jury. Neither counsel had anything further to offer, nor was any objection made. Thereupon the court asked the jury if they understood his instruction, and one juror spoke out that he did not. The court then asked counsel if there was any objection to further instruction of the jury to the effect that they could not find damages for both parties and that it was up to the jury to decide which party was entitled to such. Counsel for appellant agreed that such was proper and thereupon the court so instructed the jury. One juror then asked, "If they find both of them is negligence (sic), what would be the case there, Judge?" The court referred the jury to the written instructions and reiterated orally that they could find for either the plaintiff or defendant but that they should find a verdict both on the petition and the counterclaim. The jury retired again and returned with a verdict in favor of the plaintiff (in the sum of $5,000) on the petition and in favor of the plaintiff on the counterclaim. The court received such verdicts and ordered the same recorded.

■ The action of the trial court in directing the jury to return a verdict on the counterclaim was proper. While it is true that in this instance plaintiff's and defendant's claims were based upon facts under which the finding in favor of the plaintiff automatically destroyed the claim of the defendant and might thereby have permitted entry of judgment,[1] still the rule is that the verdict must be responsive to all issues, and this includes those raised by counterclaim. Lummi Bay Packing Co. v. Kryder, Mo.App., 263 S.W. 543; Hutchinson v. Swope, Mo.App., 256 S.W. 134; Gawk v. Millovich, Mo.App., 203 S.W. 1006; McNabb v. Payne, Mo.App., 280 S.W.2d 864 and cases cited. We think the court followed better practice in directing the jury to return a verdict on the counterclaim and thus (it was to be hoped) avoid any doubt or confusion on the subject.

■ The second verdict, being in favor of the defendant on the counterclaim, was inconsistent with the verdict on the plaintiff's petition because based upon the same set of facts. Such verdicts were self-destroying. Commercial Nat. Bank of Kansas City v. White, Mo., 254 S.W.2d 605, supra; Osborn v. Chandeysson Electric Co., Mo., 248 S.W.2d 657, 663. The jury, under direction of the court, remains in control of the verdict until it is announced and recorded, Hary v. Speer, 120 Mo.App. 556, 97 S.W. 228, and see cases cited below, and the court has the inherent power and the duty to require that verdicts which are inconsistent (as in this instance) or which are defective be corrected before they are finally recorded and made a part of the judgment. 89 C.J.S., Trial, § 512, page 192; Keyes v. Chicago, B. & Q. R. Co., 326 Mo. 236, 31 S.W.2d 50, and cases reviewed; Riley v. St. Louis Public Service Co., Mo. App., 245 S.W.2d 666; Kreibohm v. Yancey, 154 Mo. 67, 55 S.W. 260; Frank, v. Wuestner, 13 Mo.App. 577, 578; Kaimann v. Kaimann Bros., Inc., Mo.App., 182 S.W. 2d 458, 462; Glaves v. Old Gem Catering Co., Mo.App., 18 S.W.2d 564. At loc. cit. 567 of the last mentioned case the court said:

"* * * while the incident casts some slight reflection upon the jury system, it nevertheless speaks well for

---

1. Ragsdale v. Young, Mo.App., 215 S.W. 2d 514; Commercial Nat. Bank of Kansas City v. White, Mo., 254 S.W.2d 605;

see Villmer v. Household Plastics Co., Mo., 250 S.W.2d 964.

the credit of the judge that, acting simultaneously with the occurrence as he did, and in the presence of counsel for·both parties, he took prompt steps to ascertain from the jury what was the true verdict, so that the same might be duly received and recorded, and judgment rendered thereon."

It will be noted that the court, in sending the jury back, referred to both verdicts as being inconsistent and carefully refrained from making any suggestion as to which way the final decision should fall. It will also be noted that the court made inquiry of counsel and that counsel expressed approval of such action.

■ But appellant argues that the jury must have found that both plaintiff and defendant were negligent and therefore erroneously applied the law. We cannot say whether the inquiring juror, who wanted to know what would happen if both parties were "negligence," was one of the nine who signed the verdict for plaintiff or was one of the three dissenters; nor can we say that the jury did not at first misunderstand (although without good reason therefor) the direction of the court to go out and find a verdict on the counterclaim to mean that

they should find such in favor of the defendant. We do not possess the insight of the Master Clocksmith which would enable us to peer into the works of the jury's collective mind and say which wheels were turning when the verdict was struck. Absent showing to the contrary we can only assume that the jury considered the court's instructions carefully and intelligently and construed them reasonably. Prichard v. Dubinsky, 338 Mo. 360, 89 S.W.2d 530; McDermott v. United Rys. Co. of St. Louis, Mo.App., 236 S.W. 1080. We will credit them with common sense and discernment, Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449; Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 206 S.W.2d 501, and presume they followed their oaths and found a verdict according to the evidence. Rappaport v. Roberts, Mo.App., 203 S.W. 676; Lee v. Holland, Mo.App., 258 S.W.2d 30.

■ This court has no discretion to grant a new trial except upon reversible error properly assigned and presented and, not finding such in the record, we must and do affirm the judgment.

McDOWELL, P. J., and STONE, J., concur.