Murle COMEGYS,
Plaintiff-Respondent-Appellant,

v.

CHRYSLER CREDIT CORPORATION,
Defendant-Appellant,

and

Sam Ogle Chrysler-Plymouth, Inc.,
Defendant-Appellant-Respondent.

Nos. 39160, 39161 and 39170.

Missouri Court of Appeals,
Eastern District.

Jan. 16, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 16, 1979.

Daniel J. McAuliffe, Clyde C. Farris, Jr., Whaley & McAuliffe, Clayton, for Sam Ogle Chrysler-Plymouth, Inc.

Edwin D. Akers, Jr., James W. Erwin, Thompson & Mitchell, St. Louis, for Chrysler Credit Corp.

Robert T. Ebert, Walsh, Howe & Ebert, Clayton, for respondent.

SNYDER, Judge.

Chrysler Credit Corporation (Chrysler Credit) and Sam Ogle Chrysler-Plymouth, Inc. (Ogle) appeal from a jury verdict in favor of plaintiff Murle Comegys (Comegys) and against them in the amount of $1,000.00 actual and $14,000.00 punitive damages. The jury failed to render a verdict on Ogle's counterclaim for $200.00 and on his cross-claim against Chrysler Credit for any damages which might be assessed against him on plaintiff's petition. Ogle did not object to the failure of the jury to return a verdict on its cross-claim and counterclaim, nor request that the jury be instructed to do so. Twenty-seven days after the return of the jury verdict the trial court entered judgment for Ogle on both its cross-claim against Chrysler Credit ($15,000.00) and its counterclaim against Comegys ($200.00). Ogle and Chrysler Credit appeal from the judgment entered on the jury verdict; Comegys appeals from the judgment on the counterclaim; and Chrysler Credit appeals from the judgment on the cross-claim.

In their joint brief, Ogle and Chrysler Credit assert that the trial court erred: (1) in admitting into evidence photographs of a sticker found on Comegys' automobile; (2) in overruling their respective motions for a directed verdict and motions for judgment notwithstanding the verdict; (3) in submitting Instructions No. 2 and No. 3 to the jury; and (4) in permitting Comegys to testify as to the value of her automobile.

Chrysler Credit also contends it was error for the trial court to enter judgment against it on the cross-claim and Comegys claims it was error for the trial court to enter judgment against her on Ogle's counterclaim.

Because the trial court erred in giving plaintiff's verdict-directing Instruction No. 2 and in rendering judgment in favor of plaintiff and against Chrysler Credit Corporation on plaintiff's cross-claim after the jury failed to return a verdict on the cross-claim, the cause is reversed and remanded for a new trial on all the issues.

The jury could have found from the evidence, considering it in the light most favorable to plaintiff, that Comegys went to a Chrysler-Plymouth dealership operated by Ogle in Crystal City, Missouri. Comegys talked to a salesman about a 1974 Plymouth Duster which was for sale. She visually checked the condition of the interior, exterior and motor of the car and specifically noticed that the Duster's odometer read 2,860 miles. She also took the car on a short test drive, accompanied by her friend, Norman Ellsworth, and the salesman. She testified that the car "looked nice."

Comegys talked to Sam Ogle, the owner of the dealership, although he denied the conversation, and he told her that the Duster was a "low mileage" and a "nice gas-saving car." She decided to buy the car at that time but she left the lot without formally entering into a contract.

The next day, Comegys and Ellsworth returned to the dealership to close the deal. Comegys talked only to Sam Ogle at that time and agreed to buy the Duster for $3,995.00. She made a cash downpayment of $395.00 and received a trade-in allowance of $300.00 plus a loan pay-off on two cars, a Chevrolet Vega and a 1968 Oldsmobile. The balance was financed by Chrysler Credit.

There was a mutual mistake as to the model year of the traded-in Vega. It was a 1971 model rather than a 1972 as both Comegys and Ogle believed at the time the sales contract was signed. After some negotiation, the parties agreed that a fair value for the difference between a 1971 and 1972 Vega was $200.00 and Comegys agreed in writing to pay $200.00 to Ogle to take care of the difference in value.

On November 29, 1974 Ogle gave Comegys, among other documents, an odometer mileage statement signed by Ogle and stating that the Duster's mileage was 2,868 miles. The state inspection form given to Comegys by Ogle showed the mileage of 2,851. The warranty given to Comegys was for 12,000 miles less the 2,868 shown on the odometer. Ogle told Comegys that the automobile had been sold a couple of months previously to another customer and had been repossessed in Georgia. No other representations about the mileage were made.

Comegys had had no dealings or communication with Chrysler Credit before she purchased the Duster.

Comegys drove the car away on November 29. About two weeks later, Comegys and her friend, Ellsworth, were looking at the car when a strong wind blew the left door completely open revealing a sticker on the front flange of the door. The sticker had the name Mopar printed on it and two hand-written entries: the date, 9–13–74, and the mileage, 9417.9. Mopar is the name of a Chrysler Corporation parts subsidiary. The sticker found by Comegys is the type required by federal law to be placed upon the door of any vehicle whose odometer has been replaced or altered. Such stickers are generally available to anyone in the business of repairing automobiles and they are normally placed on the rear rather than the front flange of the left front door. The sticker on the Duster was in a location where it could not be seen in ordinary use.

The Duster had been repossessed by Chrysler Credit on October 10, 1974 and the title transferred from the former owner to Chrysler Credit on October 28, 1974. It was delivered to the Ogle dealership on November 6, 1974 by a Chrysler Credit representative who executed an odometer mileage statement in which he certified that the odometer reading was 2,851 miles. Chrysler Credit transferred title to the Duster to Ogle on November 15, 1974 pursuant to a Vehicle Repurchase Agreement between them.

Ogle's employees, who cleaned the car probably three times while it was on the lot, did not report seeing the sticker on the door and Sam Ogle himself said he had not seen it.

Chrysler Credit in its Answers to Interrogatories stated that it had informed Ogle that the odometer had been replaced and that the odometer reading at the time the automobile was transferred from Chrysler Credit to Ogle was not the true and correct mileage for the automobile and that "written information was available to Sam Ogle Chrysler-Plymouth, Incorporated, through change of odometer statement sticker located on the left door flange of automobile, the mileage of which is the subject of this lawsuit."

Comegys had no mechanical experience and she relied on Ogle's statement that the car in fact had low mileage. Comegys' opinion was that the difference in value between a 1974 Duster with 2,868 miles and a 1974 Duster with approximately 12,000 miles was $1,000.00. Ogle said at the trial there was no difference in value but on deposition he had testified that the difference in value was $270.00. In addition, after Comegys discovered the mileage discrepancy and complained to Ogle, Ogle offered to get her the same kind of car with low mileage for $500.00 more.

The jury returned a verdict in favor of Comegys and against Ogle and Chrysler Credit in the amount of $1,000.00 actual and $14,000.00 punitive damages but no verdict was returned on the counterclaim of Ogle or the cross-claim of Ogle against Chrysler Credit. The court entered an order overruling the defendants' after-trial motions and in the same order entered judgment in favor of Ogle on its counterclaim against Comegys in the sum of $200.00 and in favor of Ogle on its cross-claim against Chrysler Credit in the sum of $15,000.00.

The Chrysler Corporation was named originally as a defendant but the court sustained its separate motion to dismiss at the close of all the evidence.

■ Ogle and Chrysler Credit claim the trial court erred in admitting photos of the mileage sticker found on the Duster's door because there was no authentication of the writings on the sticker and because the writings were hearsay. No extended analysis of the issue will be undertaken because the cause is remanded for a new trial for other reasons and the question may not arise again under exactly the same circumstances. However, the photos were admissible because the writing they depicted was authenticated by Chrysler Credit's Answers to Interrogatories which admitted Ogle had been told the odometer had been replaced and that it did not show the true mileage. Chrysler Credit and Ogle were parties to the writing; it was an integral part of the transaction. See 15 U.S.C.A. § 1987. On the admissibility of photos, see *State ex rel. Highway Commission v. Cone,* 338 S.W.2d 22 (Mo.1960).

■ Ogle and Chrysler Credit next claim it was error to overrule their motions for a directed verdict and for judgment notwithstanding the verdict. It is sufficient to note Comegys made a submissible case on her theory of fraud and that the jury verdict was supported by substantial evidence. No error was committed in overruling these motions.

■ Appellants charge error in the submission of Instructions No. 2 and No. 3. However, only Instruction No. 2 is set forth in full in the argument portion of the brief as required by Rule 84.04(e). The text of Instruction No. 3 is not included either in Ogle's brief or its motion for a new trial. Therefore, the error as to Instruction No. 3 was not preserved.

■ The trial court erred in giving Instruction No. 2 which reads as follows:

Your verdict must be for Plaintiff and against defendant Chrysler Credit Corporation if you believe:

First: defendant Chrysler Credit Corporation represented to defendant Sam Ogle Chrysler-Plymouth, Inc. that the motor vehicle had an odometer reading of 2,851 miles intending that defendant Sam Ogle Chrysler-Plymouth, Inc. rely upon such representation and intending that plaintiff rely upon such representation in purchasing the motor vehicle, and

Second: the representation was false, and

Third: defendant Chrysler Credit Corporation did not know whether the representation was true or false, and

Fourth: the representation was material to the purchase by plaintiff of the motor vehicle, and

Fifth: plaintiff relied on the representation in making the purchase, and

Sixth: as a direct result of such representation the plaintiff was damaged.

The first paragraph of the instruction is not supported by the evidence. It requires the jury to find that Chrysler Credit represented to Ogle that the automobile had an odometer reading of 2,851 miles, intending that Ogle rely upon the representation. Chrysler Credit through its agent represented to Ogle that the odometer reading was 2,851 miles. Even assuming Chrysler Credit, by its statement of the odometer reading, which in fact was 2,851 miles, meant to represent that the actual mileage was 2,851 miles, there is no evidence proving Chrysler Credit's intent that Ogle rely upon that representation. On the contrary, the evidence is that Chrysler Credit, by means of the sticker, informed Ogle of the change of odometer. Chrysler Credit's disclosure of the odometer and mileage change put Ogle on notice that the odometer had been replaced and that the actual mileage was more than 2,851 miles. This disclosure negated any alleged intent on the part of Chrysler Credit that Ogle rely on the lower mileage reading.

The first paragraph also required the jury to find that Chrysler Credit intended that Comegys rely upon the representation when she purchased the automobile and that she did in fact rely upon it.

From all of the details of the transaction it might be inferred that Chrysler Credit intended for a purchaser, not necessarily Comegys, to rely upon the odometer mileage representation. It knew that Ogle

would sell to a customer. But there is no evidence that Comegys did indeed rely upon the Chrysler Credit representation of the odometer reading. In fact, she did not even know about it at the time of the purchase.

In addition, the second paragraph of the instruction requires a finding that the representation was false. It could have been found false only if it were interpreted to be a representation of the actual mileage.

Because of the error in giving Instruction No. 2, the judgment against Chrysler Credit on plaintiff's petition must be reversed and remanded.

■ Appellants Ogle and Chrysler Credit contend the trial court erred in allowing Comegys to testify as to the difference between the value of the auto as represented and its actual value with the additional mileage. Comegys' testimony as to value was admissible for consideration by the jury along with the other evidence of value. See *Auffenberg v. Hafley,* 457 S.W.2d 929 (Mo. App.1970); *Langdon v. Koch,* 393 S.W.2d 66, 70 (Mo.App.1965).

Chrysler Credit argues that the trial court erred in rendering judgment in favor of Ogle and against Chrysler Credit on Ogle's cross-claim. This point is well taken.

At the close of all the evidence neither Ogle nor Chrysler Credit made a motion for a directed verdict.

The jury was given sixteen instructions and twelve verdict forms. During deliberations, the jury sent the judge the following question: "How many of these verdict forms are we supposed to return?" They were told: "All of the forms must come back, but you have been given appropriate verdict forms to return any verdict you desire."

The jury returned this unanimous verdict:

We, the jury, find the issues in favor of the plaintiff, and against both defendants, and find that plaintiff is entitled to both actual and punitive damages, and we assess plaintiff's actual damages in the sum of $1,000, and we further assess plaintiff's punitive damages in the sum of $14,000.

No other verdict form was completed. Obviously there is no specific mention of Ogle's counterclaim against Comegys (plaintiff) or Ogle's cross-claim against Chrysler Credit.

After asking counsel whether they wanted the jury polled, the court discharged the jury. No objection to the verdict was raised by any party.

Ogle's motion for a directed verdict or new trial, filed after return of the verdict, requests the court to set aside the judgment rendered on Comegys' petition, to enter judgment in accordance with Ogle's motion for a directed verdict, and to render a verdict in favor of Ogle on the cross-claim and counterclaim. Twenty-seven days after the return of the jury verdict the court denied Ogle's motion for a directed verdict on the petition and sustained its motion for a directed verdict on both the counterclaim and cross-claim by rendering judgment in favor of Ogle on both.

The question presented is whether the trial court has the authority to enter judgment on a cross-claim which has been submitted to a jury which returns a verdict on the petition but fails to return a verdict on the cross-claim.

■ In an action for the recovery of money, the jury must return a general verdict (§ 510.230, RSMo 1969; Rule 71.02) and such a verdict must be responsive to all the material issues and must find for or against all the respective parties. *Stafford v. Far-Go Van Lines, Inc.,* 485 S.W.2d 481 (Mo. App.1972); *Robinson v. Riverside Concrete, Inc.,* 544 S.W.2d 865 (Mo.App.1976). "It is well settled that a verdict must be responsive to all the material issues in a cause, and if there is no finding as to some of them, the judgment will be reversed on appeal. [Cites omitted]. . . . Where the verdict is not merely informal but substantially defective, omitting to find a material issue, such defect cannot be supplied by the court. [Cites omitted]." *Lummi Bay Packing Co. v. Kryder,* 263 S.W. 543, 545 (Mo.App.1924).

"[W]here the verdict of the jury fails to find all that there is in issue between the parties, the verdict is fatally defective and such defect is a substantial and reversible error. [Cites omitted]." *National Cash Register Co. v. Kay,* 230 Mo.App. 1046, 93 S.W.2d 260, 263 (Mo.App.1936).

"Further, a judgment entered against a party not based upon a verdict is in excess of the power of the trial court. [Cites omitted]. Where a verdict cannot be fairly resolved into a definite finding for either party, it will not support the entry of any judgment. [Cites omitted]." *Robinson, supra,* 873.

■ The court has the power to correct or amend a verdict after discharge of the jury, but that power extends only to matters of form and not matters of substance. *Stafford, supra,* and cases cited therein. In *Lummi, supra,* the appellate court indicated the trial court would be adding, not correcting, a verdict if it decided the counterclaim without the support of a jury verdict after the jury had returned a verdict not mentioning the counterclaim and been discharged. If there is no verdict on an issue, the court's action cannot be categorized as a correction.

■ Counsel have a duty to call the court's attention to any irregularity or defect in the verdict [*Johnson v. Girvin's Estate,* 370 S.W.2d 163 (Mo.App.1963)], but the trial court has a duty to examine the verdict returned by the jury for defects, inconsistencies and ambiguities. *Brown v. Kroger,* 358 S.W.2d 429 (Mo.App.1962). If such are found, the court has an obligation to call them to the jury's attention and afford the jury an opportunity to correct the errors before the verdict is finally received and recorded. *Blackman v. Botsch,* 281 S.W.2d 532 (Mo.App.1955); *Johnson, supra; Brown, supra.*

In *Stroud v. Govreau,* 495 S.W.2d 682 (Mo.App.1973), inconsistent and contradictory verdicts were returned. Plaintiffs made no objection to the verdicts at their return, but in proper time filed a motion for a new trial on the ground of inconsistency. Re-

spondent argued plaintiffs failed to make a timely objection to the defect in the verdict and, therefore, waived any right to complain of the inconsistency or defect. That argument was rejected by the court which said, at page 685: "Primarily it is the duty of the court to require the jury to correct a verdict such as this as it was in *Thorne v. Thorne,* 350 S.W.2d 754 (Mo.1961). In *Boone v. Richardson, supra,* 388 S.W.2d [68] at 75, where the court held the verdict to be invalid, no immediate objection was made 'on the part of either party.'"

Ogle argues that Chrysler Credit's failure to object to the jury's failure to return a verdict on the cross-claim constitutes a waiver of Chrysler Credit's right to a jury trial, just as though a jury had been waived initially and the cause tried by the court. It is obvious that there is a material distinction between the two situations that makes the argument untenable. There is a substantial difference between waiving a jury prior to trial and failing to object to the failure of a jury to return a verdict on a cross-claim after a jury trial. Different rules apply to court and jury tried cases. Court strategy varies. The waiver of a jury trial is usually done prior to trial, not after the evidence has been submitted to a jury. Further, though waiver is a flexible and indefinite term, it is generally defined as a voluntary or intentional relinquishment of a known right. 92 C.J.S., Waiver, page 1041. Nothing in the record indicates an intent or voluntary action on the part of Chrysler Credit to waive a jury trial. Moreover, it is the duty of the court to tell the jury of any omissions and give the jury an opportunity to correct any errors. *Blackman v. Botsch, supra.* Chrysler Credit's failure to object to the absence of a jury verdict on the cross-claim did not constitute a waiver of a jury trial.

■ It was error for the trial court to render judgment on the cross-claim.

Shall the cause be remanded as to the cross-claim only and Comegys' judgment against defendant Ogle affirmed? Rule 84.14, provides, in part: "No new trial shall be ordered as to issues in which no error

appears." This reflects a determination that a judgment should be allowed to stand in as many respects as possible. If the retrial of the cross-claim will not necessarily affect the judgment on the plaintiff's claim, the judgment in favor of plaintiff should be affirmed and only the cross-claim remanded for a new trial.

In *Jackson v. Farmers Union Livestock Commission,* 238 Mo.App. 449, 181 S.W.2d 211, 222 (Mo.App.1944), the court attempted to outline a standard for remanding a cause in part:

'In remanding a cause and in determining the scope to be taken by the new trial, if the error in the previous trial relates only to a certain issue or feature of the case which is not at all dependent for its proper trial on other issues in the case already satisfactorily tried and disposed of, and a partial or limited retrial will work no injustice to any of the parties to the cause, then the cause may properly be remanded for the retrial of the issue or feature theretofore erroneously tried, and for that purpose alone. However if the whole of the issues are so interrelated and interdependent that the trial of the one issue or feature necessarily involves the trial of the other, then the whole case, if before the appellate court, should be remanded for a new trial so that the rights and liabilities of the respective parties may be tried out and adjudicated at one and the same time, by the same jury, and upon the same evidence, to the end that inconsistent findings may thus be avoided. 4 C.J. 1194.' *Bramblett v. Harlow,* Mo.App., 75 S.W.2d 626, 633; *Hall v. Martindale,* Mo.App., 138 S.W.2d 657, 660.

The petition here and Ogle's cross-claim are not interrelated and interdependent but instead are independent of each other. The transaction between Ogle and Comegys was separate and distinct from, and occurred after, the transaction between Chrysler Credit and Ogle.

If the petition against Ogle and the cross-claim were the only issues to be considered, then reversal and remand could be ordered

as to the cross-claim only, allowing Comegys' judgment against Ogle to stand. However, the remand of the verdict against Chrysler Credit on plaintiff's petition must be taken into account. The jury verdict considered the element of punitive damages as common to both parties and for that reason the cause must be remanded for a trial of all the issues.

■ Punitive damages are based (among other things) upon the defendant's ability to pay. The amount of punitive damages awarded by the jury against both Ogle and Chrysler Credit may have been influenced by the financial ability of Chrysler Credit even though there was no direct evidence on this point. An affirmance of the punitive damage award against Ogle when it may have been based upon the ability to pay of Chrysler Credit and a retrial of the petition against Chrysler Credit and the cross-claim issues only may work an injustice to Ogle.

Although the issue of punitive damages was submitted by separate instructions as to each defendant the verdict forms submitted did not permit the jury to find against each defendant separately. The three applicable verdict forms allowed the jury to find against both defendants in a single verdict director, (which is quoted above), or against Ogle and in favor of Chrysler Credit or against Chrysler Credit and in favor of Ogle. The jury found against both defendants. The jury should have been given verdict forms allowing them to find against each defendant separately while holding both liable.

■ Comegys in her brief claims error on the part of the trial court in rendering judgment on Ogle's counterclaim after the jury neglected to return a verdict on the issue. It was error, and although Comegys failed to file a motion for a new trial and thus preserve this point for review, the judgment as to the counterclaim will also be reversed and remanded. It is an integral part of the transaction and should be considered along with the other issues to be retried.

The judgments are reversed and the cause remanded for a new trial on all the issues.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.